# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| MINNIE WESLEY | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    CASE NO.: |
| | ) |
| DRONE TECHNOLOGIES, INC., and | ) |
| PREFERRED REALTY AND MGT., LLC, | ) |
| | ) |
|     Defendants. | ) |

## COMPLAINT AND DEMAND FOR A JURY TRIAL

The Plaintiff, MINNIE WESLEY, brings this action against the Defendants, DRONE TECHNOLOGIES, INC. and PREFERRED REALTY AND MGT., LLC, and alleges:

## PARTIES, JURISDICTION AND VENUE

1. Minnie Wesley is a 75 year old woman residing at 7743 India Avenue, Jacksonville, Duval County, Florida 32211, and who previously resided at 1040 Bert Road, Jacksonville, Duval County, Florida, 32211.

2. Ms. Wesley brings this action for damages based upon the Defendants' violations of the Fair Housing Act of 1968, as amended, 42 U.S.C. §§ 3601 et. seq. ("FHA") by failing to accommodate her and by retaliating against her in violation of the FHA.

3. Drone Technologies, Inc. is a domestic corporation with its principal place of business located at 4 Cher Court, Palm Coast, Florida, 32137, in Flagler County, Florida.

4. At all times relevant to this complaint, Drone Technologies Inc. was the owner of 1040 Bert Road, Jacksonville, Duval County, Florida, 32211.

5. Preferred Realty and Management, LLC is a Florida Limited Liability Company and has its principal place of business at 2223 Atlantic Boulevard, Jacksonville, Florida 32207.

6. At all times relevant to this complaint, Preferred Realty and Management, LLC was the manager of 1040 Bert Road, Jacksonville, Duval County, Florida, 32211.

7. Jurisdiction of this Court arises under 42 U.S.C. § 3613(a), (c), 28 U.S.C. § 1331 and § 1343(a)(3),(4).

8. Venue is proper in this district pursuant to 28 U.S.C. 1391(b).

## FACTUAL ALLEGATIONS

9. The FHA defines the term "handicap" as: "a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment." 42 U.S.C. § 3602(h)(1).

10. Ms. Wesley suffered a cerebrovascular accident ('CVA" or stroke) in May, 2004, and again in June, 2018, causing brain damage and aphasia.

11. Ms. Wesley's diagnoses include Chronic Obstructive Pulmonary Disease ("COPD") and she is confined to a wheelchair due to mobility issues resulting from her strokes.

12. Ms. Wesley suffers from a number of other impairments including Type 2 diabetes, peripheral arterial disease, hypertension, chronic back pain, coronary atherosclerosis, gout, hypothyroidism, hyperlipidemia, kidney disease, rheumatoid arthritis and cognitive impairments.

13. Ms. Wesley suffered from all the physical impairments set forth in this complaint prior to November, 2015.

14. Ms. Wesley's physical impairments are permanent conditions and she is substantially limited in performing one or more major life activities including speaking, walking, thinking, standing, breathing, lifting, and working.

15. Ms. Wesley's only income is from Social Security and Supplemental Security Income.

16. Ms. Wesley moved into her apartment at 1040 Bert Road in November, 2015.

17. At all times relevant to this complaint, the building was then and is currently owned by Drone Technologies, Inc.

18. Ms. Wesley was notified on or around December 13, 2017, that effective immediately Preferred Realty and Management LLC was the new property management company.

19. Ms. Wesley executed a lease renewal with Preferred Realty in January 2018, effective March 1, 2018 through February 28, 2019.

20. Ms. Wesley's monthly rent increased from $400 to $440 at that time.

### *Denial of Requests for Reasonable Accommodations and Modifications*

21. From the time Preferred Realty and Management LLC took over as manager, Ms. Wesley's daughter, Paula Bargeron, made oral requests to Kim Canady, property manager, seeking handicap access including an accessible handicapped parking space.

22. According to Ms. Canaday, Ms. Wesley's requests were denied because there was a curb ramp in place providing access to the parking lot.

23. In May 2018, Ms. Wesley requested in writing, through Ms. Bargeron, that other tenants be instructed not to park in front of the curb ramp so that she could safely board and exit her handicap transportation.

24. Ms. Bargeron, on behalf of Ms. Wesley, told Ms. Canaday at that time that Ms. Wesley's paratransit provider said its ability to transport her to appointments was precluded by other tenants blocking the access ramp.

25. In July 2018, Ms. Wesley had a second stroke which more severely impacted her mobility and necessitated reasonable modifications to her apartment and additional accommodations.

26. On July 10, 2018, while her mother was in the hospital, Ms. Bargeron spoke to Ms. Canaday on behalf of her mother.

27. Ms. Bargeron asked Ms. Canaday to enforce the "no parking" rule to prohibit parking in front of the curb ramp.

28. Ms. Canaday informed Ms. Bargeron that the owners refused to install a sign indicating tenants should not block the access ramp.

### *Complaint Filed with the Jacksonville Human Rights Commission*

29. On July 10, 2018, Ms. Wesley's daughter orally told Ms. Canaday that she was going to report the failure to reasonably accommodate her mother's access requests to the Jacksonville Human Rights Commission ("JHRC").

30. On July 11, 2018, Ms. Wesley, through Ms. Bargeron, made a written request of the management company for an accommodation and indicated that she was going to report the failure to accommodate to the JHRC.

31. On July 17, 2018, Ms. Bargeron made a written complaint to the JHRC.

32. On July 18, 2018, Ms. Bargeron again requested on behalf of her mother, in writing, a ramp her mother could use and that the owner and manager prohibit tenants from parking in front of and blocking the curb ramp.

33. On August 14, 2018, Ms. Bargeron requested, in writing, on behalf of her mother, permission to make reasonable modifications to her mother's apartment, including installing grab bars in the bathroom and a ramp at the front door entrance to her mother's unit.

34. Preferred Management sent a response dated August 17, 2018, which states: "The owners have agreed to allow you to make all the modifications desired provided you care for the expense and execution of the changes … to include handicap parking space."

35. A handicap parking space is not a reasonable modification, rather it is a reasonable accommodation.

36. No handicapped parking space was provided to Ms. Wesley during the entire time she was a tenant at 1040 Bert Road.

37. On September 14, 2018, the JHRC accepted a complaint and dual-filed it with the U.S. Department of Housing & Urban Development ("HUD"), alleging a failure to reasonably accommodate Ms. Wesley by failing to provide a handicapped parking space.

38. The complaint also alleged the Defendants, then Respondents, failed to enforce a "no parking" rule prohibiting parking in front of the only access ramp at the complex.

39. The Complainant was Paula Bargeron, Ms. Wesley's daughter.

40. The Respondents were Drone Technologies, Inc. and Preferred Realty and Management, LLC.

41. On or about September 14, 2018, the complaint was sent by the JHRC to the Defendants.

42. The parties engaged in a voluntary conciliation on October 4, 2018.

43. As part of that conciliation defendants agreed, "within thirty (30) days of the effective date of th[e] Agreement to install a reserved handicapped space in accordance with Americans with Disabilities Accessibility Guidelines."

44. The Agreement also provided, "within thirty (30) days of the effective date of this Agreement to install a handicapped access ramp in accordance with Americans with Disabilities Accessibility Guidelines."

45. On October 4, 2018, the effective date of the Agreement, a final copy of the conciliation agreement was provided to Ms. Bargeron and to each of the Defendants.

46. The cover letter sent to the parties with the agreement dated October 4, 2018, states, "under Section 408.408 of the Jacksonville Municipal Code, it is unlawful to retaliate against any person because he or she has filed a housing discrimination complaint; is associated with a complaint; has counseled or otherwise assisted any person to file such a complaint; or has provided information to the JHRC during an investigation."

47. The Defendants did not install a reserved handicapped space in accordance with Americans with Disabilities Accessibility Guidelines within 30 days as required by the conciliation agreement.

48. The Defendants did not install a reserved handicapped space in accordance with federal Fair Housing Act while Ms. Wesley lived at 1040 Bert Road.

49. The Defendants did not install a handicapped access ramp in accordance with Americans with Disabilities Accessibility Guidelines within 30 days as required in the conciliation agreement.

50. At no time during Ms. Wesley's tenancy did Defendants comply with the terms of the conciliation agreement.

*Defendants Retaliate Against Plaintiff for Exercising Rights Protected by the FHA*

51. In mid-January, Ms. Bargeron requested, on behalf of her mother, that the Defendants fix a hole in Ms. Wesley's bathroom wall.

52. The Defendants did not fix the wall despite the request.

53. On January 28, 2019, Ms. Wesley was notified in writing that Defendants were not going to renew her lease expiring February 28, 2019.

54. The stated reason in the letter was that a "determination was made to end the tenancy upon reviewing the extent of work that will be needed to repair the bathroom in the apartment properly. The bathroom will be unusable for possibly 10 days or more which would prove a burden on any occupant and would be best completed in a vacant unit."

55. Upon information and belief, the significantly overblown description of the extent of the repairs was a pretext for a discriminatory and retaliatory motive for being associated with, assisting and providing information and exercising rights protected by the Fair Housing Act, 42 U.S.C. § 3601 et seq.

56. On three occasions prior to Ms. Wesley requesting reasonable accommodations as set forth in this complaint and prior to her assisting in a complaint on her behalf with the JHRC, Ms. Wesley requested and received extensive repairs to her apartment without having to vacate.

57. During her tenancy and prior to the JHRC complaint, Ms. Wesley's entire bathroom floor was removed and replaced by Defendant Drone Technologies, Inc. without need to vacate her apartment.

58. In addition, prior to the JHRC complaint, the ceiling above Ms. Wesley's bathtub was repaired by the Defendants without need to vacate her apartment.

59. On another occasion prior to the JHRC complaint, a sizable portion of Ms. Wesley's kitchen ceiling had fallen in due to a water leak and the kitchen was not usable for a week during the repair.

60. The Defendants repaired the ceiling and Ms. Wesley was not required to vacate her apartment at that time.

61. On February 15, 2019, Ms. Wesley, through the Fair Housing Unit at Jacksonville Area Legal Aid ("JALA"), sent a letter to the Defendants seeking a renewal of her tenancy.

62. On February 22, 2019, JALA received a written response from Dale Westling, counsel for the Defendants.

63. The response stated, "I have conferred with my client and it has been decided that Ms. Wesley's lease will be renewed. However, the market rental for that unit (and paid by other tenants) is $645.00 per month. That will be charged to your client."

64. Upon information and belief, other tenants renewed their leases at or around January and February 2019, for significantly below the alleged "market rent" offered Ms. Wesley.

65. All apartments in the complex have one bedroom, one bathroom and are approximately 700 square feet in size.

66. As a result of being quoted a price greater than that of other tenants and $205 more than her then current rent, Ms. Wesley was unable to renew her tenancy.

67. Ms. Wesley had no choice but to move at the end of her tenancy in February, 2019.

68. Given her age and disabilities, moving caused Ms. Wesley great physical and emotional hardship.

69. Ms. Wesley was unable to find a suitable apartment in the short time she had to move from her home and had no choice but to move in with her daughter, Ms. Bargeron.

70. As a result of the defendants' actions, Ms. Wesley lost her independence and ability to live in her own home for a considerable time and has suffered harm and damages.

71. It was not until June 1, 2019, that Ms. Wesley was able to find a suitable apartment.

72. Upon information and belief, the rent at her new apartment is approximately $200 more per month than Ms. Wesley would have paid for rent if the Defendants renewed her lease for her apartment at 1040 Bert Road in February 2019, under the then existing terms.

73. Upon information and belief, the rent for current residents for an apartment at 1040 Bert Road, and whose leases were renewed at or around January and February 2019, are substantially less than $645 per month, the quoted rent amount when Ms. Wesley was finally offered a renewal.

## CLAIMS

Violations of the Federal Fair Housing Act, 42 U.S.C. § 3601 *et seq*.

### *RETALIATION IN VIOLATION OF 42 U.S.C. § 3617*

74. Plaintiff realleges and incorporates by reference each and every preceding paragraph.

75. Defendants injured Plaintiff by violating the federal Fair Housing Act of 1968, as amended, 42 U.S.C. §3601 *et seq*., by retaliating against Ms. Wesley in violation of 42 U.S.C. § 3617 by coercing, intimidating, threatening, or interfering with her exercise or enjoyment of her home, or on account of her having exercised or enjoyed, or on account of her having aided or encouraged in the exercise or enjoyment of, any right granted or protected by section 42 U.S.C. §§ 3603, 3604, 3605, or 3606.

76. Defendants' unlawful actions were intentional, willful and implemented with callous or reckless disregard for the Plaintiff's civil rights.

77. As a result of the Defendants' conduct, the plaintiff has suffered injury, harm and damages.

### FAILURE TO PROVIDE A REASONABLE ACCOMMODATION OR GRANT A MODIFICATION IN VIOLATION OF 42 U.S.C. § 3604

78. Plaintiff realleges and incorporates by reference each and every preceding paragraph. Defendants injured Plaintiff by violating the federal Fair Housing Act of 1968, as amended, 42 U.S.C. §3601 *et seq.* by refusing to provide a reasonable accommodation or grant a modification to accommodate Plaintiff's disability in violation of 42 U.S.C. §3604(f)(3)(A) & (B).

79. Defendants' unlawful actions were intentional, willful and implemented with callous or reckless disregard for the Plaintiff's civil rights.

80. As a result of the Defendants' conduct, the plaintiff has suffered injury, harm and damages.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this court:

1. Permanently enjoin Defendants from discriminating on the basis of disability or handicap and order Defendants to adopt new policies consistent with the FHA.

2. Award Plaintiff compensatory damages in such actual and consequential damages, including an award for her emotional distress, on her claims as she proves at trial;

3. Award Plaintiff punitive damages against Defendants in an amount calculated to punish defendants for their willful and egregious conduct;

4. Award Plaintiff the costs of this action;

5. Award Plaintiff reasonable attorneys' fees;

6. Order such other and further relief as this Court deems just and proper.

## **JURY TRIAL DEMAND**

The Plaintiff hereby requests a trial by jury on each and every issue so triable.

Respectfully submitted,

*/s/ Suzanne Garrow*
Suzanne Garrow, Trial Counsel for Minnie Wesley
FBN: 122184
Jacksonville Area Legal Aid, Inc.
126 West Adams Street
Jacksonville, FL 32202
904-356-8371 ext. 374
904-405-1976
suzanne.garrow@jaxlegalaid.org

*/s/ Stephen U. Pitel*
Stephen U. Pitel, Trial Counsel for Minnie Wesley
FBN.: 84575
Jacksonville Area Legal Aid, Inc.
126 West Adams Street
Jacksonville, FL 32202
(904) 356-8371 Ext. 327
(904) 356-8780 Fax
stephen.pitel@jaxlegalaid.org